UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMBER S.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Cause No. 1:17-cv-3966-WTL-MPB** |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| **Commissioner for Operations, Social Security** | ) |
| **Administration,[2]** | ) |
| | ) |
| **Defendant.** | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Amber S. requests judicial review of the final decision of Defendant

Nancy A. Berryhill, Deputy Commissioner for Operations of the Social Security Administration

("Deputy Commissioner"), denying her application for Disability Insurance Benefits ("DIB").

The Court rules as follows.

## I. PROCEDURAL HISTORY

The Plaintiff protectively filed her application for DIB on February 19, 2014, alleging an

onset of disability on August 19, 2013. The Social Security Administration ("SSA") initially

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Oct. 23, 2018). The caption has been updated to reflect Ms. Berryhill's current official title.

denied the Plaintiff's application on May 16, 2014.  After she timely requested reconsideration,

SSA again denied her claim on September 8, 2014.  Thereafter, the Plaintiff requested a hearing

before an Administrative Law Judge ("ALJ").  An ALJ held a hearing on May 23, 2016, at which

the Plaintiff, two medical experts, John A. Pella, M.D., and Don A. Olive, Ph.D., as well as a

vocational expert ("VE") testified.  The ALJ issued his decision denying the Plaintiff's

application on September 27, 2016.  After the Appeals Council denied her request for review on

September 5, 2017, the Plaintiff filed this action seeking judicial review on October 30, 2017.

## II. <u>EVIDENCE OF RECORD</u>

The relevant evidence of record is amply set forth in the parties' briefs and need not be

repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

## III.  <u>APPLICABLE STANDARD</u>

Disability is defined as "the inability to engage in any substantial gainful activity by

reason of a medically determinable mental or physical impairment which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of at least

twelve months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must

demonstrate that her physical or mental limitations prevent her from doing not only her previous

work, but any other kind of gainful employment that exists in the national economy, considering

her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).  In determining whether a

claimant is disabled, the Deputy Commissioner employs a five-step sequential analysis.  At step

one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her

medical condition and other factors.  20 C.F.R. § 404.1520(b).

At step two, if the claimant does not have a "severe" impairment (i.e., one that

significantly limits her ability to perform basic work activities), she is not disabled.  20 C.F.R. §

404.1520(c).  At step three, the Deputy Commissioner determines whether the claimant's

impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV.  <u>THE ALJ'S DECISION</u>

The ALJ found at step one that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ determined that the Plaintiff had "the following severe impairments: migraines associated with dizziness, residuals from a knee replacement, obesity, major depressive disorder, generalized anxiety disorder and panic disorder with agoraphobia." R. at 16 (citations omitted). The ALJ found at step three that the

impairments, or combination of impairments, did not meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a limited range of sedentary work as defined in 20 CFR 404.1567(a). The claimant is restricted to performing simple, repetitive tasks or unskilled work. The claimant could not perform fast-paced or production work.

R. at 19. The ALJ concluded at step four that the Plaintiff was incapable of performing her past relevant work as a customer service representative, marketing director, and sales representative. At step five, the ALJ found, based on VE testimony considering the Plaintiff's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision, including as a telephone quotation clerk, document preparer, and charge account clerk. Accordingly, the ALJ concluded that the Plaintiff was not disabled.

## V. **DISCUSSION**

The Plaintiff argues that two issues necessitate remand, that (1) the ALJ failed to properly analyze the evidence supporting that her migraines equaled Listing 11.03, and (2) the ALJ ignored supportive evidence and did not provide a logical bridge between the evidence and his conclusion that the Plaintiff's alleged subjective symptoms related to her migraines were not supported by the record. Based on the specific testimony of the medical expert, Dr. Pella, the Court finds that the two arguments are not analytically distinct and will address them together.

To prove presumptive disability by meeting the severity of a listed impairment, a claimant must establish, with objective medical evidence, all of the criteria specified in the listing. *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the

Listing in order to receive an award of" benefits at step three.). In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if they have other findings related to the impairment or have a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).

The ALJ called a medical expert, Dr. Pella, to assist him in evaluation of the Plaintiff's claim. The ALJ gave Dr. Pella's opinion "great weight," noting that Dr. Pella testified that the Plaintiff had a history of headache disorder and had developed migraines. R. at 23. The ALJ asked Dr. Pella if there was objective evidence to support the cause of the migraines. Dr. Pella answered definitively, "Yes, there is," and explained that an MRI showing white matter abnormalities, based on the Plaintiff's age, symptoms, and history, "would most likely fit migraine." R. at 38-39. Dr. Pella also confirmed that the impairment caused combined symptoms of headaches and vertigo, and opined that "these symptoms that are severe impairments and again very objective." R. at 39. The ALJ noted Dr. Pella's testimony regarding the Plaintiff's treatment that she "went through various medication trials with a focus on headaches and had injections as well. Dr. Pella indicated that the claimant had used Imitrex as a primary therapy, adding that no other modality had worked well." R. at 23.

Dr. Pella was asked to provide an opinion about whether any listing was met. "I don't believe any physical listing is met, Your Honor, so apparently the credibility of the frequency of the headaches and the fact [sic] on functioning. There's somewhere in the record it's somewhere between two and four I think is self described." R. at 37. The Plaintiff's representative asked for clarification:

> And we – you kind of eluded to this but there is that epilepsy listing that
> migraines have sometimes been associated with 11.03 and her neurologist states

that her chronic migraines occur two to three times per week and, you know, there's been the ongoing treatment for the last couple of years. If – if her neurologist statements as well as her own statement developed the frequency of her headaches are credible, would she then equal a listing?

R. at 39–40.[3]  Dr. Pella responded, "That would be the closest listing with that degree of

migraines."  R. at 40.  The ALJ asked Dr. Pella again what he meant and he responded, "With

regard to frequency of the migraines and given credibility that would be an appropriate listing for

evaluation."  *Id.*  Dr. Pella testified similarly in *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th

Cir. 2018), in which the Seventh Circuit held:

> These answers indicated honestly what seems obvious.  Having not even examined Plessinger, Dr. Pella was not in a position to evaluate the credibility of his account of the pain he suffered.  Dr. Pella was saying, in other words, that someone else—presumably the ALJ—would need to assess those issues to make a sound decision based on all the evidence in the case.  The ALJ cannot delegate to any doctor, and certainly not to a non-examining doctor, the task of evaluating the claimant's credibility.

Thus, the determinative issue in this case, including whether Listing 11.03 was equaled, is the

ALJ's credibility assessment of the Plaintiff's reported, subjective symptoms, specifically the

frequency of her migraines.[4]

---

[3]The Plaintiff does not argue that the ALJ improperly weighed the opinion of her treating neurologist, Edward Zdobylak, M.D., who opined on May 19, 2016, based on a treating history with appointments every three months since October 2014, that she had severe pain from migraines occurring two to three times per week, R. at 991, and would be expected to be absent from work more than four days per month, R. at 994.  Accordingly, the Court's analysis does not depend on the opinion.

[4]The listing effective at the time of the decision required: "11.03 Epilepsy—non-convulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Effective September 29, 2016, Listing 11.03 is now "[r]eserved," though it has been replaced by a similar listing, Listing 11.02(B) requiring dyscognitive seizures "at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment. . . ."  *Id.*  Furthermore, the VE testified that absences more than "approximately one time per month on a regular and consistent basis" would exceed the tolerated threshold for competitive employment.  R. at 55.

Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and provided new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id.* The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). As such, the standard used to review an ALJ's subjective symptom evaluation remains whether the assessment is patently wrong.

In evaluation of subjective symptoms, the ruling describes longstanding policy that:

Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304 at *4; *see Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("And so 'once the claimant produces medical evidence of an underlying impairment, the [Deputy] Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.'"). "A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304 at *5.

Despite Dr. Pella's specific testimony that the frequency of the Plaintiff's migraines was the determinative issue in the case, the Court finds the decision lacking any meaningful, focused discussion of the issue. In the ALJ's step three listing analysis, he stated that headaches "are sometimes analogized to seizures," before conclusively asserting that the Plaintiff "lacks documentation of the required frequency of the headaches. Thus, the listing criteria are not met, even if the analogy is appropriate." R. at 17. In discussing Dr. Pella's opinion, the ALJ noted Listing 11.03 was discussed by the medical expert. However, the ALJ cryptically stated that "Dr. Pella's testimony shows that he is unable to conclude that any listing has been equaled at this time," without specifying why Dr. Pella could not conclude that the listing was equaled. R. at 23. The determination required an assessment by the ALJ based on all the evidence.

As noted above, the ALJ must provide a logical bridge from the evidence to his ultimate determination. The Court agrees with the Plaintiff that similar to the Seventh Circuit's decision in *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), the ALJ did not provide the required logical bridge from the evidence related to the Plaintiff's migraines and the ALJ's determination that the Plaintiff would be capable of sedentary work on a sustained basis.

While the ALJ summarized the Plaintiff's testimony concerning the frequency of her

migraines, R. at 19-20, concluded with familiar boilerplate that her "symptoms are not entirely

consistent with medical evidence and other evidence in the record for the reasons explained in

this decision," R. at 20, and referenced the fact that the Plaintiff's "headaches are essentially self-

described," R. at 23, he made no attempt to analyze the record documenting the Plaintiff's

relevant statements to her treating providers. "We have repeatedly held that although an ALJ

does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the

evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it."

*Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ruling provides that the SSA "will

consider the consistency of the individual's own statements. To do so, we will compare

statements an individual makes in connection with the individual's claim for disability benefits

with any existing statements the individual made under other circumstances." SSR 16-3p, 2017

WL 5180304, at *8. As noted by the Plaintiff, she has made numerous statements throughout the

period at issue to her providers while seeking treatment for her migraines about their frequency.

*See, e.g.*, R. at 565 (reported two migraines in the last week); R. at 569 (reports one to two

migraines a week), R. at 613 (same), R. at 699 (pain reaches nine out of ten about two to three

days a week). The ALJ failed to discuss any of the relevant statements, much less provide an

analysis of whether her statements were consistent or in conflict with her testimony.

The ALJ did discuss the extensive treatment the Plaintiff has received with multiple

providers, including referrals to specialists, as well as the array of medications and other forms

of treatment that she has tried. For example, the ALJ noted that Plaintiff has tried prescribed

medications including Topamax, Meclizine, Bupropion, Amitriptyline, Verapamil, Botox, Elavil,

and Imitrex, as well as balance therapy, physical therapy, nerve blocks, a transcutaneous

electrical nerve stimulator, a Master Blaster, occupational therapy, and trigger point injections.

R. at 21-22; *see* R. at 700 (also listing Tylenol, Aleve, Keppra infusions, Vimpat infusions, Geodon, Lamictal, and Naltrexone). The ALJ noted that she was treated at Balance MD, Indiana Polyclinic, JWM Neurology, and the Cleveland Clinic. R at 21-22. However, the ALJ never offered any explanation as to how the extensive treatment informed his subjective symptom evaluation. "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, 2017 WL 5180304, at \*9.

The Deputy Commissioner argues that statements within the ALJ's summary of the Plaintiff's treatment, including "Topamax has helped the claimant's headaches,"[5] support the ALJ's subjective symptom evaluation. However, this argument ignores the medical expert's conflicting testimony, noted above, that all other modalities besides Imitrex had not helped. Furthermore, if the isolated reference to relief was meant to support the ALJ's finding, the ALJ failed to address the later conflicting evidence on the subject. *See* R. at 700 (noting that the Plaintiff "had also been tried on topiramate[6] for 4-5 months with no benefit").

Furthermore, the Court agrees with the Plaintiff that the ALJ did not properly consider the side effects caused by the one medication that Dr. Pella suggested gave her some relief and was her primary therapy for her migraines, Imitrex. One factor that the ALJ should consider in assessing the claimant's subjective symptoms is "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at \*8. The Plaintiff's medical records indicate that "[t]he patient

---

[5]The Court finds the other statements indicating improvement with treatment apply to the Plaintiff's other medical impairments and are not relevant to the evaluation of her migraines.

[6]Topamax is a name brand for the generic topiramate. https://www.topamax.com/ (last visited October 18, 2018).

currently uses Imitrex which helps lessen the length of the migraines but they knock her out." R.

at 421. Despite the strong side effect, the record indicates that she continued regular use of the

medication. "She has used sumatriptan,[7] which causes fatigue, but is partially effective and she

uses [it] about 2-3 times in a week." *Id.* at 700. The continued use of the medication, despite the

side effect, is probative of the Plaintiff's subjective complaints and should have been addressed

by the ALJ.

The Court finds only two other portions of the ALJ's analysis that could arguably support

his subjective symptom evaluation. However, both are problematic.

The ALJ appeared to depend heavily on the Plaintiff's activities of daily living to show

that she remained quite active and productive. However, as the Plaintiff points out, she qualified

the statements concerning what she was able to accomplish by specifying that she had good days

and bad days, the latter of which often limited her to being in bed due to her migraines. *Id.* at

177-78. The Plaintiff and her husband also reported that she depended on him at times to

accomplish things around the house and take care of their son. *Id.* at 169-76, 179. The Deputy

Commissioner acknowledges that the ALJ failed to confront the qualifying statements, but

argues, "[h]owever, 'ALJs are not required to discuss every piece of evidence, and that principle

applies equally to a credibility assessment.'" Dkt. 18 at 10 (citing *Sawyer v. Colvin*, 512 F.

App'x 603, 608 (7th Cir. 2013) (unpublished)). While the legal proposition may be true

generally, in this context it is contrary to clearly established Seventh Circuit precedent that an

ALJ cannot use activities of daily living to discredit a claimant's subjective symptoms without

considering (1) how the claimant is specifically able to accomplish those activities, (2) the

differences between working around the house with breaks and at his or her own pace versus

---

[7]Imitrex is a name brand for the generic sumatriptan.
https://www.drugs.com/imitrex.html (last visited October 18, 2018).

meeting the demands of competitive, full-time employment, and (3) the assistance the claimant

gets from others to perform the activities. *See e.g.*, *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.

2000); *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005); *Moss v. Astrue*, 555 F.3d 556,

562 (7th Cir. 2009); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

Furthermore, as noted above, the ALJ discussed the specialized treatment that the

Plaintiff received at the Cleveland Clinic, but did not discuss the statements she made to those

providers concerning the frequency of her migraines. *See* R. at 699-700 (pain reaches nine out of

ten two to three days a week and she uses sumatriptan two to three times a week). However, the

ALJ concluded:

> Although the claimant was treated for headaches on several occasions while at the
> Cleveland Clinic, there is no corroboration in the medical evidence of the alleged
> frequency, duration and intensity of the claimant's headaches. No medical
> personnel from the Cleveland Clinic have submitted a corroborating statement.
> Further, there are no direct observations from the Cleveland Clinic personnel
> documenting that the claimant has headaches or the alleged frequency, duration,
> or intensity.

R. at 22. The provider diagnosed intractable chronic migraines and provided comprehensive

treatment advice before the Plaintiff participated in a focused therapy that required frequent

visits to the provider. R. at 798-99. There is no indication that the provider disbelieved her

reported symptoms. The Court also agrees with the Plaintiff that it is difficult to imagine what

direct observations the ALJ expected to find documenting the frequency of the Plaintiff's

migraines. Even evidence like a migraine journal or log would be dependent on self-reported

symptoms. As noted above, the absence of objective indicators of a claimant's pain, including

its intensity and frequency, cannot alone be determinative, given the obvious reality that pain

symptoms, like a migraine headache, cannot be measured.

Remand is required for further evaluation of the Plaintiff's subjective symptoms,

including the frequency of her migraine headaches, and further evaluation as to whether she has

an impairment or combination of impairments that meets or medically equals a listing and whether she is otherwise disabled.

## VI. **CONCLUSION**

For the reasons set forth above, the decision of the Deputy Commissioner is **REVERSED** and this case is **REMANDED** to the Deputy Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 10/23/18

_William T Lawrence_

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication